UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DENNY RAY ROSELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:13cv294 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social

2

> Security Act on September 30, 2011.
>
> 2. The claimant did engage in substantial gainful activity during 2005, after his alleged onset date of January 1, 2005; however, his earnings fell below substantial gainful activity levels in 2006, and remained below substantial gainful activity levels through his date last insured of September 30, 2011 (20 CFR 404.1571 *et seq*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: back disorder, COPD, and depression (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(c) except that the claimant can occasionally climb, crouch, crawl, and kneel. The claimant can frequently balance and stoop. The claimant can occasionally reach overhead bilaterally. The claimant should avoid concentrated exposure to dusts, fumes, gases, odors and poor ventilation. The claimant can perform simple and repetitive work, and has adequate concentration for such simple and repetitive work. The claimant can tolerate brief and superficial contact with coworkers, supervisors, and the general public, and can tolerate the stresses associated with simple and repetitive work.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a groundskeeper (DOT# 406.684-014) which is work at the medium level of exertion. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date, through September 30, 2011, the date last insured (20 CFR 404.1520(f)).

(Tr. 14-22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals

3

Council denied review. This appeal followed.

Plaintiff filed his opening brief on March 17, 2014. On April 29, 2014, the defendant filed a memorandum in support of the Commissioner's decision. The Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the Commissioner's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff was forty-nine years old on his alleged onset date but turned fifty that same year, having been born on September 28, 1955. He was fifty-five on the date of the hearing. (Tr. 36) His past work includes work as a delivery driver, a laborer and a grounds keeper. Plaintiff alleges he has COPD, a back disorder and depression.

Plaintiff first presented to the Veteran's Administration for treatment in January 2005. He reported severe stomach pain as well as shortness of breath with activity. He reported suspected weight loss and lack of appetite. He also believed he has had blood in his stools for the past two years. He claimed he was fatigued and slept a lot. At plaintiff's appointment in January 2008 he was complaining of depression and anxiety attacks triggered by television shows. He also reported seeing friends get shot and bleed out. He further complained of low back pain.

Plaintiff presented to the Veteran's Administration mental health division in February 2008. He reported sadness with crying and hearing voices and seeing shadows at times, which resulted from an episode of witnessing a shooting when he lived in Arizona. Plaintiff was placed on Risperidone to help control the voices. Plaintiff presented in March 2008 with complaints of gradually worsening low back pain. He reported falling and having pain at a level of fifteen out of ten. He said it was worse with movement and radiated into his right leg. He also complained of weakness to his legs and numbness into his right leg. He was instructed to go to the local emergency room.

In mid April 2008, plaintiff complained of a lot of pain in his back and numbness and tingling in his right leg, despite the use of Tramadol. He was issued a cane at this visit. At an earlier appointment on April 3, he complained of numbness and tingling into his right toes. He further reported he had gone to the emergency room and was given a prescription for Darvocet for the pain, but could not afford to fill the prescription. He rated his pain as a ten out of ten. In May 2008, plaintiff presented for a yearly examination. At that appointment he was complaining of severe pain in his low back which worsened with bending, and radiated into his legs. He limped when he walked and used a cane for ambulation. Exam of his back showed

tenderness on palpation, positive straight leg raise at five degrees on the right and fifteen degrees on the left, as well as weakened motion against strong resistance in his low back, although range of motion was normal. X-rays showed degenerative disc disease at L2-L3. Plaintiff also had a psychological evaluation on this date. He had a history of sexual abuse as a child. Plaintiff reported inpatient treatment in 2007 while in Arizona due to depression, suicidal ideation and cannabis abuse. Plaintiff continued with outpatient treatment and his depression improved and he was in remission with regard to his cannabis abuse. Plaintiff also reported he had received treatment in Indiana with Dr. Sartori and reported depression, difficulty sleeping, hearing voices and seeing shadows on occasion. Dr. Sartori believed plaintiff's cognitive abilities were in question. At the follow up appointment plaintiff's hallucinations were controlled with medication and he was feeling better. Plaintiff reported a difficult time keeping jobs as he would get bored and get fired. Plaintiff acknowledges he has a long history of drug use, mostly with the use of marijuana. He reported he was smoking twice a month when he could get marijuana. He reported feeling depressed, fatigued and that living is useless. He was diagnosed with mild to moderate depression. Impression was depressive disorder, cannabis dependence in partial remission, dysfunctional personality traits, malaise and fatigue.

On April 21, 2008 an x-ray of plaintiff's lumbar spine found mild levoconvex scoliosis and mild degenerative changes at L2-L3 with minimal osteophyte changes. In November 2008 plaintiff presented complaining of ongoing back pain as well as right shoulder pain. He reported attending physical therapy and using a TENS unit without improvement. On exam, he did not have full range of motion due to back pain. An MRI of his right shoulder was ordered.

In December 2008, plaintiff presented to discuss the results of his recent MRI. He

reported he previously attended physical therapy for his back and that therapy did not provide relief. It was recommended he have a consult with a pain clinic in Indianapolis, however he advised that he could not afford to travel to Indianapolis. Plaintiff presented in April 2009 for his mental health follow up. He again complained of intrusive thoughts about the death of his friend as well as flashes of animals in his vision. He walked with a pronounced limp. Plaintiff reported that he was willing to cut back on smoking.

At his mental health appointment in June, 2009 he reported improvement but said he had problems with sleeping due to back pain. He also reported vague shadows and a desire to stay on Risperidone for his anxious thoughts. Plaintiff stated he was taking hydrocodone, two tablets four times per day, for back pain. Plaintiff was also on albuterol four times per day as needed for shortness of breath.

Plaintiff presented in July 2009 for a follow up mental health appointment. Upon presentation he complained of pain all over and having a headache. He reports he had increased his smoking to one pack per day. His mood was dysphoric and his affect was flat. At his appointment in November 2009, plaintiff complained of not doing too well and reported difficulty with sleeping despite taking medication. He reported pain at a level of nine out of ten and was not currently on any pain medication. In October 2009 plaintiff was diagnosed with COPD and degenerative disc disease, chronic low back pain and GERD. He had chronic shortness of breath. He was very thin and appeared chronically ill with diminished lung sounds. Plaintiff went to the doctor in January 2010 after falling and having increased back pain. He also was feeling more depressed with crying spells and often sleeping the entire day.

Plaintiff followed up for psychiatric care in March 2010. At that appointment he reported

he was doing fair but waking up frequently at night due to nightmares. He arrived at his appointment using his mother's cane to help him walk. His mood was dysphoric and his affect was flat. Impression was major depression and anxiety. At plaintiff's appointment with his mental health care provider he related that he was having quite a bit of pain in his foot, knee, back and hip. He indicated he would be discussing these problems with Dr. Wolfram. He reported he continued to have dreams about his dead friend and he was difficult to redirect to other topics. He reported he still occasionally saw shadows. He had a pronounced limp.

In April 2010 plaintiff reported ongoing depression and trouble with sleeping. He reported he slept approximately four hours per night, awaking either from pain or nightmares. He presented to Dr. Donald Wolfram, his primary care physician and was given Percocet for his low back pain. In July 2010, plaintiff presented with complaints of more pain because he was out of his pain medication. He further reported he had fallen several times due to feeling like his ankle or knee would give out. He reported he continued to feel very depressed despite taking all his medications. He reported crying for over two hours at night. He also reported triggers from hearing fireworks. At plaintiff's appointment in September 2010 he again complained of severe back pain that was limiting his ability to get around but he did leave his house in September, twice to mow someone's yard and once to go to the store for his mother. He was still having difficulty with sleep and continued having nightmares. His mood was dysphoric and his affect was flat. He ambulated slowly with a limp.

In October 2010 plaintiff stated his depression was worse, he was having bad dreams and barely leaving the apartment and was isolating himself from other people. Plaintiff had a pronounced limp when he arrived at the appointment. At plaintiff's November 2010

appointment he reported difficulty with having people in his home for Thanksgiving and didn't really participate at the gathering. He reported taking a couple hits of cocaine when a friend was over and regrets his decision. He also reports purposely burning himself with a soldering gun to distract himself from his low back pain. Plaintiff tested positive for cocaine two times in two years.

At plaintiff's March 2011 counseling appointment he reported incidents of both eating and smoking in his sleep with no recollection afterwards. He continues to have considerable low back and hip pain and has to crawl to get himself up if he is laying down or sitting on the floor. At this appointment he had anxious ruminations and his affect was subdued. At plaintiff's April 2011, appointment he complained of being in constant pain despite regular use of Ibuprofen. He reported he was down to two cigarettes per day. He reported hoping to get his pain medication back if he had two clean drug screenings.

When plaintiff presented for his May 2011 appointment, he reported he had great pain in his back and was "eating Ibuprofen". He still complained of ruminations, sleep disruption and still hearing his friend on occasion. At plaintiff's appointment in July 2011, he was still hearing his friend's voice and believed he may have seen the vision of a dead person. He admitted to using cocaine on one occasion while his brother was living with him.

Dr. Ralph Inabnit examined plaintiff at the request of the Disability Determination Bureau. Dr. Inabnit determined plaintiff had diminished breath sounds with shallow respirations and prolongation of the expiratory phase, a component of COPD. There was reduced range of motion in plaintiff's lumbar spine. Plaintiff was using a cane when he came to the appointment. He reported his pain was eight out of ten and was getting worse. He reported being only able to

walk two blocks before he gets short of breath. He stated he was still smoking but has been decreasing his consumption. Dr. Inabnit reported plaintiff's casual walk was normal. Dr. Inabnit recommended an x-ray of plaintiff's back as he suspected there was probably more degeneration as well as chest x-ray and pulmonary function test.

Dr. Inabnit conducted a second examination on November 12, 2011. Plaintiff continued to complain of low back pain with a pain level of eight out of ten which radiated into his legs and increased with movement. He had a cane with him at the appointment. He didn't use his cane when walking to the treatment table. Dr. Inabnit again found diminished breath sounds and a prolonged expiratory phase. There was some limitation in range of motion of his lumbar spine. Knee and ankle jerks were one out of five. He reported his back pain has been worse with shooting pain down his legs but has not been in physical therapy and has not been seen in pain management. Plaintiff also complained of depression, insomnia and poor memory. Casual walk was normal. Dr. Inabnit suspected plaintiff had osteoarthritis and recommended a lumbar x-ray. Dr. Inabnit reported there were no radicular symptoms on examination.

Plaintiff was given a pulmonary function test in May 2010. His function studies showed some impairment but were not at the listing level.

Dr. Wolfram was plaintiff's treating physician at the Veteran's Administration. On February 7, 2011 Dr. Wolfram filled out a medical assessment form ("checkbox form") indicating plaintiff's functional capacity as a result of his chronic diseases. Dr. Wolfram opined that plaintiff could only sit, stand and walk for approximately one hour each for a total of three hours per day as a result of plaintiff's chronic severe back pain. Dr. Wolfram further opined that plaintiff could lift and carry five pounds on a frequent basis, ten pounds on an occasional basis

and never above ten pounds. Dr. Wolfram further limited plaintiff to no repetitive use of either hand or foot. Plaintiff was also not to bend, twist, squat, kneel, and climb ladders, crouch or stoop.

In support of his request to reverse the decision of the Commissioner, the plaintiff first argues that the ALJ's reason for not giving controlling weight to plaintiff's treating physician, Dr. Wolfram, is not supported by substantial evidence.

The ALJ is required to give controlling weight to the opinion of the treating physician if that is opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and if the medical opinion is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d. 863, 870 (7th Cir. 2000). *See also* 20 CFR §§ 404.1527(d)(2), 216.927(d)(2). The ALJ opined that she gave no weight to Dr. Wolfram's medical assessment as it was unsupported by medical evidence. (Tr. 24) The ALJ further opined that she gave significant weight to the Consultive Examiner's opinion as the examiner had the benefit of a face to face contact and had reviewed claimant's medical records. (Id.)

As noted above, Dr. Wolfram, plaintiff's treating physician, completed a checkbox opinion form stating that Rosell was unable to, among other things, sit, stand, or walk more than an hour per day, use his hands or feet for any repetitive actions, or reach above shoulder level. Although the form stated that "it is important that you relate particular medical findings to any assessed reduction in capacity" and "the usefulness of your assessment depends on the extent to which you provide supportive information," the only "medical findings supporting the opinion" were as follows: "vet has chronic back pain that limits all activities." Clearly, the ALJ was well within her discretion to give this opinion of disabling limitations no weight because it was

11

unsupported by the medical evidence of record, inconsistent with plaintiff's limited treatment history for his physical impairments, and was contrary to the opinions of Dr. Inabnit, who not only reviewed plaintiff's medical records, but also examined him in April 2010 and November 2011. In contrast to Dr. Wolfram's unexplained checkbox opinion, Dr. Inabit wrote two comprehensive reports after administering a battery of clinical tests. Thus, the ALJ reasonably found Dr. Inabnit's opinions better-supported and more consistent with the record as a whole than Dr. Wolfram's opinion. (Tr. 20). *see Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ minimally articulate[d] his reasons—a very deferential standard that we have, in fact, deemed lax.") (internal quotations omitted).

As noted, the regulations require medical opinions be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2), which guards against the possibility that "the treating physician may too quickly find disability." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *see also Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (treating physician's familiarity with patient can mean greater knowledge but also more sympathy for his claim of disability); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (holding that the ALJ reasonably gave no weight to an opinion that had no supporting treatment notes, and the circumstances suggested that the treating physician "'might have been leaning over backwards to support the application for disability benefits'") (quoting *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982)). Accordingly, an ALJ is not bound by a treating physician's conclusory or unsupported opinion. *See, e.g.*, *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, the ALJ found that Dr. Wolfram's opinion was unsupported by the medical evidence, including his own treatment notes:

> The assessment portion noted the claimant had chronic back pain, was a "relentless smoker," and that the disability paperwork had been completed. The objective medical findings only noted that the claimant was "unable to bend at the waist or raise his arms overhead," but there was no other objective findings to support the limitations in the Medical Source Statement . . . [Dr. Wolfram] opined that the claimant can only sit, stand, and walk for one hour of an eight-hour workday. Dr. Wolfram reported that the claimant had "chronic back pain" that limits all activities, but these limitations are completely in excess to what evidence reported in the medical records from the VA (Ex. 10F). Tr. 19-20.

This court finds that the ALJ was within her discretion to reject Dr. Wolfram's opinion due to its "conclusory nature and lack of supporting facts." *Smith v. Colvin*, No. 1:12-CV-237-JEM, 2013 WL 5436828, at *7 (N.D. Ind. Sept. 27, 2013); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (stating that "check-box form" opinions are generally "weak evidence"); *Eskew v. Astrue*, 462 Fed. App'x 613, 616 (7th Cir. 2011) (the Seventh Circuit has "discounted" medical opinions in the form of a "check-box form"); *Phillips v. Astrue*, 413 Fed. App'x 878, 881 (7th Cir. 2010) (criticizing a "checkbox" opinion in which the doctor "did not explain any of his findings, or discuss the extensive medical record, or even identify the [evidence] he deemed significant"). In cases such as this, where the fatal flaw in the treating physician's opinion is a complete lack of support, there is not much else that the ALJ needs to say about the opinion. *See Olsen v. Colvin*, No. 12-3665, 2014 WL 185378, at *4 (7th Cir. Jan. 17, 2014) (ALJ properly rejected treating physician's opinion where "none of the limitations listed" in the checkbox form were "mentioned in any of [the treating physician's] progress notes before" the date the form was completed).

Plaintiff, in his brief, lists supposed support for Dr. Wolfram's opinion in the record.

Rosell Br. 11-13. But this attempt to rehabilitate Dr. Wolfram's opinion fails for several reasons. As an initial matter, many of these findings are from sources other than Dr. Wolfram, whose earliest treatment note is from October 2009. *See* Tr. 302 (Dr. Levine in May 2008), 765 (Dr. Lindgren in November 2008), 780 (NP Pompey in August 2008), 786 (NP Pompey in July 2008), 798 (NP Long in March 2008). Courts have been willing to credit checkbox opinions that are fully supported by *the same doctor's* treatment notes, such that the basis for their opinion is evident in their own records. *See Smith*, 2013 WL 5436828, at *7 (citing *Larson*, 615 F.3d at 751). As the Commissioner notes, it would be exceedingly illogical to credit Dr. Wolfram's opinion because he is more likely to have a detailed view of plaintiff's impairments when, in fact, most of the findings cited by plaintiff were made by others, and it is far from clear how Dr. Wolfram concluded that plaintiff could only sit or stand an hour per day and could never perform repetitive motions with his hands and feet. In addition, many of these alleged "clinical findings" merely consist of plaintiff stating that he was in pain when trying to obtain narcotic medications. *See* Tr. 322, 336, 375, 798, 858, 861, 880, 920, 928. "[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *see also White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (medical opinion based on "subjective complaints rather than accepted medical techniques" given little weight where complaints found not credible). This principle applies in great force to the instant case because the ALJ found that plaintiff was not credible given his past drug use, his declining treatment other than narcotics, and his conservative course of treatment. Tr. 19; *see Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) ("Given the deference we show to an ALJ's factual determinations, we will not question

the ALJ's finding that Simila's treatment was relatively conservative"); *id.* at 519-20 (claimant's overuse of pain medication and declining other treatment was "hardly the kind of conduct that helps one succeed on a disability claim").

Finally, the ALJ found that Dr. Inabnit's opinions, which were based on his review of plaintiff's medical records and two full examinations, were more consistent with the medical evidence than was Dr. Wolfram's checkbox opinion. Tr. 20, 507-15, 1070-79. This, too, was a valid reason for discounting Dr. Wolfram's opinion, as one regulatory factor is whether the opinion is consistent with the record as a whole, 20 C.F.R. § 404.1527(c), which includes the opinion of an examining source, *see Hemphill v. Barnhart*, No. 01-6556, 2002 WL 1613721, at *6 (N.D. Ill. July 18, 2002) (ALJ may credit better-supported opinion of examining source over less-supported opinion of treating source) (citing *Veal v.. Bowen*, 833 F.2d 693, 698-699 (7th Cir. 1987)). Dr. Inabnit considered plaintiff's complaints of back pain, but reported essentially normal findings save for a diminished range of motion in his lumbar spine on examination, and did not assess any functional limitations due to the back pain. Tr. 19, 1078. This was a reasonable summary of Dr. Inabnit's examination reports, which indicated, among other things, that plaintiff had normal sensations, normal gait, normal range of motion in his upper extremities, hip, knee, and ankle/foot, 4/5 motor function in his lower and upper extremities, normal strength and tone in all of his extremities, and 4/5 grip strength in his hands (which was later described as normal). Tr. 509-12, 1074-78. Thus, the ALJ's decision, which gave great weight to Dr. Inabnit's well-supported opinion just after giving no weight to Dr. Wolfram's opinion because it was poorly-supported, shows that the ALJ relied on the former in rejecting the latter.

Nevertheless, plaintiff contends that some of Dr. Inabnit's findings actually support Dr.

15

Wolfram's opinion. For example, Dr. Inabnit's reflex testing showed a 2 out of 5 knee and ankle jerk at the 2010 examination, and a 1 out of 5 knee and ankle jerk at the 2011 examination. Tr. 1076. Plaintiff argues that this evidence supports his subjective allegations of pain, but he does not explain how it shows that he can only sit or stand for an hour per day or can never use his hands or feet for repetitive motions. *See Klahn v. Colvin*, No. 13-165, 2014 WL 841523, at *12 (E.D. Wis. Mar. 4, 2014) ("The fact that degenerative disease was noted on MRI or X-ray is likewise not inconsistent with the ALJ's assessment of Klahn's credibility. The presence of degenerative disease does not by itself show functional limitation or pain."); *see generally Veasey v. Astrue*, No. 3:11-CV-67-CAN, 2012 WL 5866308, at *8 (N.D. Ind. Nov. 19, 2012) (argument that a diagnosis meant that the claimant actually experienced limiting or disabling symptoms is an unfounded leap in logic) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005)).

In addition, Dr. Inabnit did not view the differences between the 2010 and 2011 test results as significant. To the contrary, he concluded in 2011 that the 2010 examination "was similar to his exam at this time." Tr. 1076-77. Indeed, in summarizing the relevant evidence in the 2011 report, Dr. Inabnit stated that plaintiff's "reflexes were symmetrical and normal bilaterally." Tr. 1078. Thus, plaintiff cannot bootstrap isolated findings from Dr. Inabnit's opinion into support for Dr. Wolfram's conclusory opinion of disabling limitations. This court concludes that the ALJ provided "good reasons" for not crediting Dr. Wolfram's checkbox opinion. While plaintiff can point to some evidence that arguably supports giving the opinion different weight, it is far from clear that Dr. Wolfram based his opinion on this evidence, most of which consists of plaintiff's subjective allegations that were found not credible.

The Commissioner argues that, in the alternative, this court should analyze the ALJ's weighing of Dr. Wolfram's opinion under the rubric of harmless error. *Shinseki v. Sanders*, 556 U.S. 396 (2009), held that, under the "'harmless-error' rule that courts ordinarily apply in civil cases," the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted and thus "must explain why the erroneous ruling caused harm . . . by marshaling the facts and evidence." *Id.* 556 U.S. at 409-10. *Sanders* explained that, in assessing harmless error, courts should not use "mandatory presumptions and rigid rules rather than case-specific application of judgment" and warned against "setting an evidentiary barrier so high that it could never be surmounted." *Id.* at 409. Thus, while the harmless error doctrine does not excuse grave deficiencies in an agency's decision, it obviates the need for a remand to correct errors that have not been shown to be prejudicial. *Id.* at 407.

In determining whether an error was harmful, the court assesses how the agency would resolve the issue on remand, not how it was actually resolved, and therefore is not bound by the agency's stated rationale for its decision. *See McKinzey*, 641 F.3d at 892 ("The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective"). *Mengistu v. Ashcroft*, 355 F.3d 1044, 1047 (7th Cir. 2004). In the present case, plaintiff has not shown that Dr. Wolfram's opinion is well-supported or generally consistent with the record. Indeed, despite the instructions on the attorney-supplied form completed by Dr. Wolfram to list "medical findings support[ing] this opinion," Dr. Wolfram wrote only that "vet has chronic back pain that limits all activities." Tr. 543. Dr. Wolfram appears to have only examined plaintiff a handful of times in the course of treating him. In April 2010, the same month that Dr. Inabnit first examined plaintiff, Dr. Wolfram reported

that plaintiff had minimal appearance of pain, could bend at the waist with little difficulty, had equal strength and deep tendon reflexes, and a negative straight leg raise test. Tr. 651. And, on the same day that Dr. Wolfram opined that plaintiff was disabled, plaintiff stated that he could not bend at the waist or lift his arms over his head, but Dr. Wolfram did not appear to conduct a physical examination, change plaintiff's medications to address these complaints, or suggest additional tests or treatment. Tr. 789-80.

Additionally, Dr. Wolfram's opinion contradicts plaintiff's hearing testimony. Dr. Wolfram opined that plaintiff could not use either hand for grasping, pushing and pulling, or fine manipulation. Tr. 542. Plaintiff testified at the hearing that he had difficulty lifting his shoulders high, but had no problems with his hands and fingers. Tr. 46. In limiting plaintiff to one hour per day of standing, sitting, and walking, Dr. Wolfram opined that plaintiff would have to lay down more than one-half of the day, Tr. 541, whereas plaintiff testified that he could sit comfortably for at least an hour, stand for 15-20 minutes, and walk about two to three city blocks, Tr. 42, and only laid down for approximately one-third of the day. Tr. 44-45.

This court agrees that no reasonable ALJ could credit Dr. Wolfram's opinion. *See McFadden*, 465 F. Appx. at 560 (ALJ's error in weighing treating source statement not harmful where the "opinion did not identify any objective medical findings on which it was based"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (same).

The record in the present case is not closely balanced, which distinguishes cases such as *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010), where the Commissioner merely showed that the ALJ "might have reached the same result had she considered all the evidence and evaluated it as [its] brief does. Rather, this case resembles those in which courts in this circuit have found a

technical error in evaluating a medical opinion harmless because the significant weight of the record evidence supported the denial of benefits. *See McFadden*, 465 F. App'x at 560 (ALJ's failure to address medical opinion deemed harmless); *Jernigan*, 2013 WL 1213269, at *6 (failure to evaluate opinion harmless were record was not evenly balanced and the ALJ's errors, if any, were poor articulation rather than a misapprehension of material evidence).

Accordingly, the decision of the Commissioner will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: June 30, 2014.

                                                s/ William C. Lee
                                                William C. Lee, Judge
                                                United States District Court